* * * * * * * * * * *
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and argument before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. Accordingly, the Full Commission affirms, with some modifications, the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. At the time of the injury giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act. *Page 2 
2. During the course of her employment with defendant-employer on November 17, 2002, plaintiff sustained a compensable injury by accident to her right shoulder when she was reaching around a cabinet door.
3. On November 17, 2002, an employment relationship existed between the employee-plaintiff and defendant-employer.
4. Plaintiff's average weekly wage was $ 183.79, which yields a compensation rate of $ 122.54.
5. Federal Insurance Company (Chubb Group of Insurance Companies) was the carrier on the risk for defendant-employer.
6. Defendants have been paying temporary total disability benefits to plaintiff from December 9, 2002 and continuing.
7. The issues for decision by the Industrial Commission include the following:
 (a) Whether plaintiff is entitled to attendant care services as ordered by her authorized treating physician, Dr. James S. Kramer; and
 (b) If so, the number of hours of attendant care to which plaintiff is entitled;
 * * * * * * * * * * * EXHIBITS
The following exhibits were received into evidence:
1. Stipulated Exhibits:
 a. Additional medical records as noted in a Supplemental Stipulation dated January 19, 2006.
2. Plaintiff's Exhibits: *Page 3 
 a. Exhibit #1, IC Form 18, dated May 13, 2005
 b. Exhibit #2, IC Form 60, dated May 1, 2003
 c. Exhibit #3, IC Form 33, dated May 27, 2005
 d. Exhibit #4, IC Form 33R, dated May 27, 2005
 e. Exhibit #5, Plaintiff's Motion for Approval of Attendant Care Service with attachments, filed with the Industrial Commission on May 13, 2005
 f. Exhibit #6, Defendant's Response to Plaintiff's Motion for Approval of Attendant Care Service, with attachments, filed with the Industrial Commission on May 18, 2005
 g. Exhibit #7, Administrative Order denying plaintiff's Motion for Approval of Attendant Care Service
 h. Exhibit #8, Murphy Warner Orthopaedic Specialists-James S. Kramer, M.D., and Robert A. Wainer, M.D., 6/1/95 through 4/6/05 (35 pages)
 i. Exhibit #9, Sports Medicine Center, P.T. records, 12/9/02 through 1/15/03 (11 pages)
 j. Exhibit #10, Reports of Emily McKinney, R.N., 6/16/2005 through 8/18/05 (11 pages)
 k. Exhibit # 11, Guilford Orthopaedic and Sports Medicine Center, Robert A. Wainer, M.D., 5/4/93 (1 page)
 * * * * * * * * * * *
Based upon the competent evidence of record herein, the Full Commission makes the following: *Page 4 
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 82 years old and employed by defendant-employer as a salesperson. At the time of her injury, plaintiff was able to live and function independently. Plaintiff is right-hand dominant.
2. On November 17, 2002, plaintiff felt a pull in her shoulder when she was required to get on her knees and reach across a jewelry case with a broken door lock in order to assist a customer.
3. Plaintiff has been treated since the date of her injury by James S. Kramer, M.D., a family practitioner with an emphasis in primary care sports medicine. Shortly after her injury, Dr. Kramer ordered an MRI of the right shoulder. The MRI revealed a tear in two of the four right shoulder rotator cuff tendons. One tendon, the infraspinatus tendon, was completely torn. Another tendon, the supraspinatus tendon was partially torn.
4. Dr. Kramer talked with plaintiff about whether to pursue conservative treatment or a more invasive operation. After considering the risks of surgery and the duration of recovery, plaintiff chose to pursue conservative treatment. In Dr. Kramer's opinion, plaintiff's decision to avoid surgery was reasonable and Dr. Kramer agreed with that decision. Subsequently, plaintiff underwent a course of physical therapy.
5. On February 13, 2003, Dr. Kramer assigned plaintiff a ten percent permanent partial disability rating to the right arm. At the hearing before the Deputy Commissioner, plaintiff testified that she had been unable to return to work since November 17, 2002 due to her injury. *Page 5 
6. On February 13, 2003, Dr. Kramer released plaintiff to return to work, with a permanent restriction of no lifting greater than two pounds, and no overhead reaching, pulling or pushing with the right upper extremity. However, plaintiff has been unable to return to work because defendant-employer was unable to accommodate these permanent restrictions.
7. Between 2003 and 2005, plaintiff began to experience pain in her lower back unrelated to her shoulder injury. She visited Dr. Kramer on multiple occasions and he prescribed a conservative course of treatment. In spite of the condition of her shoulder and her back pain, plaintiff was able to continue performing the basic functions of daily living.
8. On December 14, 2004, plaintiff reported to Dr. Kramer that she had experienced more pain and less strength in her right shoulder after she reached into her car and lifted an object. By February 2, 2005, the increased pain in plaintiff's shoulder had become a hindrance, affecting activities of daily living. Dr. Kramer ordered another MRI, which revealed that the partial tear in the supraspinatus tendon had worsened into a complete tear. In Dr. Kramer's opinion, this was most likely an irreparable tear.
9. Dr. Kramer opined that the complete tear was a continuation of the original injury, and would not have happened but for the original injury.
10. The Full Commission finds that plaintiff's reaching for an item in her care was not an independent, intervening cause of disability in any way attributable to plaintiff's own intentional conduct.
11. Over the course of the next several months, plaintiff, who is right hand dominant, experienced increasing difficulty performing activities of daily living, including meal *Page 6 
preparation, laundry, cleaning and personal care involving such matters as combing her hair and dressing.
12. On April 6, 2005, Dr. Kramer opined that it was a medical necessity that plaintiff receive the services of a home health care provider, and he gave plaintiff the name of an agency that could provide such services. Dr. Kramer opined that plaintiff needed "a couple of hours pretty much on a daily basis."
13. The Full Commission finds that the attendant care that Dr. Kramer has recommended to alleviate the effects of plaintiff's shoulder pain and weakness is a direct consequence of plaintiff's original work-related injury.
14. In a letter to Executive Secretary Tracey H. Weaver dated May 18, 2005, defendants informed the Industrial Commission that they were willing to provide "4-hours per week to assist plaintiff in various household activities." Nonetheless, as of the date of the hearing before the Deputy Commissioner, defendants have failed to provide any attendant care to plaintiff. The Full Commission finds the agreement by defendants to provide four hours of attendant care and their subsequent refusal to do so to be unreasonable and unnecessarily litigious.
15. After Dr. Kramer recommended attendant care services for plaintiff, Emily McKinney, a nurse employed by the Nurses Section of the North Carolina Industrial Commission, became involved in plaintiff's case. Ms. McKinney reviewed Dr. Kramer's medical records and attempted to talk with the adjuster for defendant-carrier about the provision of attendant care services for plaintiff. However, despite Ms. McKinney's involvement in the case, defendants never authorized any attendant care services for plaintiff and instead advised Ms. McKinney that they were going to wait until the Deputy Commissioner had rendered a *Page 7 
decision as they believed plaintiff was requesting more care than they were willing to provide and that some care issues were not related to plaintiff's work-related injury.
16. Based upon the competent evidence of record including the testimony of medical experts, and as agreed upon by defendants, the Full Commission finds that it is necessary and reasonable for plaintiff to have attendant care for two hours per day, seven days per week by a home health care professional.
17. At the time of the hearing before the Deputy Commissioner, plaintiff had employed an attendant caregiver for approximately one month. As defendants had refused to provide such care, plaintiff was forced to use health insurance for which she pays the premiums to obtain this care.
18. The Full Commission finds that defendants have defended this matter without reasonable ground in that they have refused to authorize payment for any attendant care services to plaintiff even though it had been recommended by plaintiff's attending physician and they had previously agreed in writing to provide four hours of attendant care. Furthermore, defendants have resisted the Industrial Commission's attempts to coordinate plaintiff's attendant care through the Commission's Nurses Section.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW *Page 8 
1. On November 17, 2002, plaintiff suffered an admittedly compensable injury by accident arising out of and in the course of her employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. As a result of plaintiff's admittedly compensable injury by accident on November 17, 2002, plaintiff is entitled to compensation for temporary total disability at the rate of $ 122.54 per week commencing November 17, 2002 and continuing until further Order of the Industrial Commission. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to payment by defendants of all medical expenses, including attendant care services, incurred or to be incurred, as a result of her compensable injury, for so long as such examinations, evaluations and treatments, may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability. Specifically, plaintiff is entitled to attendant care for two hours per day beginning April 6, 2005 and continuing until receipt of a professional assessment of plaintiff's attendant care needs. N.C. Gen. Stat. §§ 97-2(19); 97-25.
4. Plaintiff is entitled to receive reasonable attorney fees to be paid directly to plaintiff's attorney as part of defendant's costs of appeal to the Full Commission. N.C. Gen. Stat. § 97-88.
5. Plaintiff is entitled to an award of attorney's fees in the amount of $ 2,000.00 to be paid directly to plaintiff's attorney because defendant's actions were based upon stubborn, unfounded litigiousness. N.C. Gen. Stat. § 97-88.1.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following: *Page 9 
 AWARD
1. Subject to a reasonable attorney's fee hereinafter approved, defendants shall pay compensation to plaintiff for temporary total disability at the rate of $ 122.54 per week from November 17, 2002 and continuing until further Order of the Commission for plaintiff's compensable injury on November 17, 2002. Compensation that has accrued shall be paid in a lump sum.
2. Plaintiff is entitled to all medical expenses, including attendant care services, incurred or to be incurred, as a result of her compensable injury, for so long as such examinations, evaluations and treatments, may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability. Specifically, plaintiff is entitled to payment by defendants of attendant care for two hours per day beginning April 6, 2005 and continuing until receipt of a professional assessment of plaintiff's attendant care needs.
3. Pursuant to N.C. Gen. Stat. § 97-88, defendants shall pay to plaintiff as a part of the bill of costs, a reasonable attorney's fee for legal services provided to plaintiff by his counsel for the appeal of this matter to the Full Commission. Plaintiff's counsel shall submit to the undersigned, within 30 days from the date of this Opinion and Award, an itemized statement of the hours expended by plaintiff's counsel in the appeal of this matter to the Full Commission.
4. Defendants shall pay plaintiff's counsel a reasonable attorney's fee as a sanction pursuant to N.C. Gen. Stat. § 97-88.1 in the amount of $ 2,000.00 for her work performed in bringing plaintiff's claim for attendant care benefits. This fee shall be paid by defendants in a lump sum directly to plaintiff's counsel and is in addition to the benefits due plaintiff. *Page 10 
5. Defendants shall pay the costs.
This the ___ day of May 2007.
 S/______________ PAMELA T. YOUNG COMMISSIONER
CONCURRING: S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/______________ BUCK LATTIMORE CHAIRMAN *Page 1